UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

NORTH READING SCHOOL COMMITTEE
Plaintiff

v.                                                              Civil Action No. 05-11162 RCL

BUREAU OF SPECIAL EDUCATION
APPEALS of the MASSACHUSETTS
DEPARTMENT OF EDUCATION,
MASSACHUSETTS DEPARTMENT
OF EDUCATION, and TIMOTHY
GRAFTON and COURTNEY GRAFTON,
as Parents and Next Friend of M.G.
Defendants

---

## MEMORANDUM OF LAW IN SUPPORT OF NORTH READING SCHOOL COMMITTEE'S MOTION TO DISMISS COUNT II OF THE COUNTERCLAIM[1]

### STATEMENT OF THE CASE

This is a case in which the North Reading School Committee seeks judicial review pursuant to 20 U.S.C.§1415(1)(2) of a final decision issued by the Bureau of Special Education Appeals of the Massachusetts Department of Education. The Parents of the child concerned, Timothy and Courtney Grafton, have filed a counterclaim against North Reading alleging retaliation in violation of Section 504 of the Rehabilitation Act of 1973. Specifically, the Parents allege that North Reading or its agent "released" the Hearing Officer's decision to the local newspaper. North Reading School Committee brings this motion to dismiss the retaliation claim because (1) the Parents have not exhausted administrative remedies prior to bringing this counterclaim; and (2) even in a light most favorable to the plaintiff, the facts alleged do not state a claim upon which

---

[1] North Reading filed an Answer on Count I of the Counterclaim and seeks dismissal on Count II only.

relief may be granted in that the specific actions of which the Parents complain do not rise to the level of retaliation as a matter of law.

## FACTS

1. On October 27, 2004, the Defendants and Plaintiffs-in-Counterclaim, Timothy and Courtney Grafton (hereinafter "Graftons" or "Parents") filed a request for hearing with the Bureau of Special Education Appeals of the Massachusetts Department of Education (BSEA) alleging that North Reading had failed to provide a free and appropriate education for their child (hereinafter "Student"). (Parents' Counterclaim, ¶31, attached hereto as Exhibit 1).

2. Hearing Officer Sara Berman conducted an evidentiary hearing on February 15, 17 and 18 and March 6, 2005 and issued a decision finding in favor of the Parents. (Counterclaim, ¶32). The Hearing Officer ordered North Reading to reimburse the Parents for the costs of the Student's placement at a private school, the Landmark School, from the beginning of the 2004/2005 school year to March 9, 2005. (Id.) The Hearing Officer's decision is an exhibit attached to North Reading's Complaint. (See North Reading's Complaint, attached hereto as Exhibit 2; Hearing Officer's decision attached hereto as Exhibit 3).

3. The North Reading School Committee appealed the decision to this Court for judicial review because of significant errors in the Hearing Officer's decision. (Complaint, ¶¶27, 28, 30, 31).[2]

---

[2] Those errors include, but are not limited to, the Hearing Officer's finding that North Reading's program was inappropriate because the physical, structural environment did not adequately address the Student's auditory processing and attentional issues. (Complaint, ¶30). The Hearing Officer stated "North Reading has presented no evidence of whether and how" North Reading would address the Student's auditory processing and attentional issues. (Hearing Officer's Decision at 19). This finding is significant because it is contrary to extensive evidence provided by North Reading on the issue of appropriate and extensive accommodations available within the public school program to meet the Student's language, organizational

2

4.      The Hearing Officer's decisions is a public document pursuant to §1415(h)(4)(A)[3] and is posted on the Department of Education's Bureau of Special Education Appeals' website.

5.      In the May 26, 2005 edition of the *North Reading Transcript*, an article appeared entitled, "School Com. votes to appeal SPED decision." A copy of the article is attached hereto as Exhibit 4.

6.      The purported retaliatory actions described in the counterclaim are alleged to have occurred after the Hearing Officer issued her decision and were not raised at the administrative level. (Counterclaim ¶34).

7.      The purported retaliatory action is that North Reading released the Hearing Officer's decision to the local newspaper. The counterclaim states:

> "Since the decision of Hearing Officer on [sic] Berman, North Reading has engaged in retaliatory conduct to punish the Student and his parents for the exercise of their rights under Section 504. Specifically, North Reading and/or its agent released information to the "North Reading Transcript" a newspaper of general circulation in the community, concerning the decision of Hearing Officer Berman, in violation of privacy interests of the Student. The Student and his parents have suffered damage as a result of the release of protected information." (See Counterclaim, ¶34).

---

and attentional issues, as well as physical and structural modifications within the public school program. (Complaint, ¶28, 30). Furthermore, it was the only factor upon which the Hearing Officer distinguished the Parents' private school placement and the public school program and determined that the public school program offered by North Reading was not appropriate. (Decision at 19). Other significant errors include the Hearing Officer's finding that "most of the Student's teachers [at the private school] are certified special education teachers, although they may be certified for a different age group than Student's." (Complaint, ¶27). This finding was also contrary to considerable documentary evidence and testimony that established a lack of appropriate certification status for the vast majority of Landmark School's staff. Id.

[3] That section states that findings and decision "shall be made available to the public consistent with the requirements of section 1417(b) of this Title relating to the confidentiality of data, information, and records . . ."

3

**ARGUMENT**

I.   THE MOTION TO DISMISS STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Fitzpatrick v. Town of Falmouth*, 321 F. Supp. 2d 119, (2004) (citing *Swierkiewicz v. Sorema N.A.*, 534 U. S. 506, 514 (2002). Factual averments contained in the operative pleading are taken to be true and all reasonable inferences are made in favor of the plaintiff. *Frazier v. Fairhaven School Committee*, 276 F.3d 52, 56 (1st Cir. 2002).

A court may consider matters outside the pleadings without treating the motion as one for summary judgment. In ruling on a motion to dismiss, the court can consider documents that are indisputably authentic and which are expressly limited to the allegations in the complaint. *Bedall v. State Street Bank & Trust,* 137 F.3d 12,16 and 17 (1st Cir. 1998). Materials attached to a motion to dismiss that present no facts that conflict in any way with the facts alleged in the complaint do not convert a Rule 12(b)(6) motion to dismiss to a Rule 56 motion. *Terry v. Pearlman*, 42 F.R.D.335, 337 (D. Mass. 1967). Thus, this court may consider the attached newspaper article referred to in the counterclaim because it is integral to the counterclaim and it does not contradict, challenge or rebut facts presented in the Counterclaim.

II.  THE COUNTERCLAIM MUST BE DISMISSED BECAUSE THE
     PLAINTIFFS-IN-COUNTERCLAIM FAILED TO EXHAUST
     ADMINISTRATIVE REMEDIES

The Parents' Counterclaim alleges violations of Section 504 of the Rehabilitation Act in the context of a retaliation claim. Section 504 of the Rehabilitation Act mandates

4

that "No otherwise qualified individual with a disability . . . shall solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . " 29 U.S.C. §794(a). The Rehabilitation Act was amended in 1978 to incorporate the "remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 [42 U.S.C.A. §2000d et seq]. 29 U.S.C. §794(a)(2). The anti-retaliation regulation was adopted pursuant to Title VI of the Civil Rights Act and provides as follows:

> No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part. The identity of complainants shall be kept confidential except to the extent necessary to carry out the purposes of this part, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder.

34 C.F.R. §100.7(e). The regulation applies to any right or privilege secured by the Rehabilitation Act. Title VI extends its remedies to "any person aggrieved" by violation of the Act. 42 U.S.C. §2000d-2, including non-disabled individuals suing because of retaliation for attempts to vindicate the rights of a disabled person. See *Weber v. Cranston School Committee, et al.* 212 F. 3d 41, 48 (1st Cir. 2000)(holding parents of disabled student had standing under the anti-retaliation regulation).

Parents of a disabled student filing a claim of retaliation under Section 504, however, cannot bring a federal claim unless they have exhausted the Individual with Disabilities Education Act's (IDEA's) administrative remedies. See *Weber v. Cranston School Committee*, 212 F.3d 41 at 50 (requiring parent to exhaust administrative remedies

prior to bringing Section 504 retaliation claim); *Frazier v. Fairhaven School Committee*, 276 F. 3d 52, 62 (1st Cir. 2002)(requiring parents to exhaust administrative remedies prior to bringing federal claims).

Section 1415(b)(6) of the IDEA provides parents with the "opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the [disabled] child." IDEA requires recourse to this due process hearing when plaintiffs seek relief available under subchapter II of the IDEA even if the suit is brought pursuant to a different statute. Section 1415(l) provides:

> Nothing in this chapter shall be constructed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Tilte V of the Rehabilitation Act of 1973, or other Federal Statutes protecting the rights of children and youth with disabilities, except that before the filing of a civil action under such laws seeking relief that is available under this subchapter, the procedures under subsection (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subsection."

In *Weber v. Cranston School Committee*, 212 F. 3d 41, the First Circuit rejected the parent's argument that she should not be required to exhaust administrative remedies because the relief she sought with her Section 504 retaliation claim, money damages, was not available to her under the IDEA. *Id* at 50. The court stated that "the IDEA complaint provision in subchapter II affords the "opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." *Id.* at 51 (emphasis supplied, quoting §1415(b)(6)). The court found the parent's retaliation claim was literally "related" to the "identification, evaluation, or educational placement of [her]

6

child" and to her effort to gain for him the "the provision of a free appropriate public education." *Id.* at 50.

*Weber* left open the question of whether an argument of futility may excuse the Parents from the exhaustion requirement *Id.* at 53. In the subsequent case of *Frazier v. Fairhaven School Committee*, 276 F.3d 52, 62 (1st Cir. 2002), however, the First Circuit rejected a futility argument and held that a party must exhaust all available avenues of administrative review regardless of whether the administrative process offers the particular type of relief that is being sought. This is true whether the plaintiff is seeking money damages as in *Frazier* or injunctive relief. *See Fitzpatrick v. Town of Falmouth*, 321 F.2d 119, 128 (2004). The burden of demonstrating an exception from the exhaustion requirement falls on the party seeking to avoid the requirement. *Rose v. Yeaw*, 214 F.3d 206, 211(1st Cir. 2000). Here, the plaintiffs-in-counterclaim have pled no facts upon which they may be excused from exhausting administrative remedies.

III.   **EVEN IF THE PLAINTIFFS-IN-COUNTERCLAIM ARE NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES, THE ALLEGATIONS DO NOT SUPPORT A COGNIZABLE RETALIATION CLAIM.**

To establish a retaliation claim under Section 504, the claimant must establish that (1) the plaintiff was engaged in protected activity; (2) the alleged retaliator knew that plaintiff was involved in protected activity; (3) the alleged retaliator undertook some action disadvantageous to the actor; and (4) a retaliatory motive played a substantial part in prompting the adverse action. *Frazier v. Fairhaven School Committee*, 276 F.3d 52 (1st Cir. 2002). In the present case, although the Plaintiffs-in-Counterclaim satisfy the first two elements (they were engaged in protected activity of advocating for their disabled child and North Reading knew of their involvement in the protected activity),

7

they cannot satisfy the last two prongs even assuming all facts alleged in the Counterclaim to be true.[4]

Plaintiffs-in-Counterclaim allege "[s]pecifically, North Reading and/or its agent released information to the "North Reading Transcript" a newspaper of general circulation in the community, concerning the decision of Hearing Officer Berman, in violation of privacy interests of the Student. The Student and his parents have suffered damage as a result of the release of protected information." (Counterclaim, ¶34). Assuming the facts as alleged to be true, the acts complained of, as a matter of law, do not rise to the level of retaliation. The IDEA provides that the findings and decision of a Hearing Officer "shall be made available to the public . . ." Accordingly, the Hearing Officer's decision is a public document. Under any set of facts, therefore, the alleged release of a public document or information relating to a public document cannot be considered disadvantageous or adverse to the Parents.

Moreoever, the anti-retaliation regulation prohibits acts which "intimidate, threaten, coerce or discriminate" against the Parents. The alleged act simply does not rise to that level and cannot support a claim of retaliation. Compare *Weixel v. Board of Education of New York,* 287 F.3d 138, 148 (2d Cir. 2002) (allegations sufficient to allege retaliation were threats to parents, refusing to promote child and instituting child welfare proceedings).

The Parents incorrectly assert that "[t]he Student and his parents have suffered damage as a result of the release of protected information." As set forth above, the hearing officer's decision is not "protected information." It is a public document and is

---

[4] North Reading denies the allegations set forth in the Counterclaim, but assume them to be true for the purposes of this motion only.

8

made public consistent with section 1417(b) "relating to the confidentiality of date, information, and records . . ." A review of the Hearing Officer's decision show that the parents and child are not identified.[5]

WHEREFORE the Defendant-in-Counterclaim, North Reading School Committee, respectfully requests that this court dismiss Count II of the Counterclaim against it and award it costs and attorneys fees associated with the filing of this motion.

> Respectfully submitted,
> The Plaintiff/Defendant-in-Counterclaim,
>
> North Reading School Committee,
>
> By its attorneys,
>
> SULLIVAN & NUTTALL, P.C.
>
> _____
> Thomas D. Nuttall
> BBO No.: 546940
> 1020 Plain Street, Suite 270
> Marshfield, MA  02050
> (781) 837-7428

---

[5] Moreover, a reading of the subject newspaper article also does not identify the parents or child. This is further basis for this court to conclude that the Parents cannot show any set of facts consistent with allegations that North Reading released "protected" information.

## Certificate of Service

I hereby certify that I have served a copy of the foregoing document on all counsel of record for each party by first class mail, postage prepaid.

Date: 9/20/05

_____
Thomas J. Nuttall

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.