UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NORTH READING SCHOOL COMMITTEE,
Plaintiff

v.                                                                    Civ. No. 05-11162 RCL

BUREAU OF SPECIAL EDUCATION APPEALS
of the MASSACHUSETTS DEPARTMENT of
EDUCATION, MASSACHUSETTS DEPARTMENT
Of EDUCATION, and TIMOTHY GRAFTON and
COURTNEY GRAFTON, as Parents and Next Friend
of M.G.,
Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF COURTNEY AND TIMOTHY GRAFTON'S OPPOSITION TO MOTION TO DISMISS AND MOTION to STRIKE

### STATEMENT OF THE CASE

This proceeding was initiated by the North Reading School Committee ("School Committee") to challenge the findings of Hearing Officer Sara Berman of the Bureau of Special Education Appeals, following a hearing conducted over four days, which determined that the School Committee had failed to provide a free and appropriate public education for the student, M.G. Within days of that decision, a front page newspaper article appeared concerning that decision and the determination of the North Reading School Committee to appeal that decision. The parents of the student, Courtney and Timothy Grafton ("Parents"), have filed a Counterclaim to the School Committee's complaint for judicial review alleging that the School Committee released information concerning the due process proceeding in an effort to intimidate and harass them. The North Reading School Committee, Defendants-in-Counterclaim, have filed a Motion to

Dismiss the Counterclaim, contending that the retaliation count of the Counterclaim should be dismissed for failure to exhaust administrative remedies and for failure to state a claim upon which relief may be granted. The Parents oppose this Motion, stating that given the nature of their claim, a return to the Bureau of Special Education Appeals is both unnecessary and would be futile. The School Committee's argument that the Parent's complaint does not rise to the level of retaliation as a matter of law is without merit.

## FACTS

The only facts relevant to the consideration of the School Committee's Motion to Dismiss are those plead in the Parents' Counterclaim. The facts relevant to the Motion to Dismiss are as follows:

1. On October 27, 2004 the Parents, Courtney and Timothy Grafton, Plaintiffs-in-Counterclaim, filed a request for hearing with the Bureau of Special Education Appeals of the Massachusetts Department of Education (BSEA) alleging that the North Reading School Committee had failed to provide a free and appropriate public education for their child (hereinafter "Student') (Parents' Counterclaim, ¶31).

2. An evidentiary hearing was conducted on February 15, 17, and 18 and March 6, 2005 by Hearing Officer Sara Berman. A twenty page decision finding that the North Reading School Committee had failed to provide the Student with a free and appropriate public education was issued by Hearing Officer Sara Berman on May 6, 2005. The Hearing Officer further determined that the Parents had placed the student in an appropriate private special education school and directed North Reading to reimburse the Parents for the costs of this placement for the period from September 1, 2004 through

March 9, 2005. (Counterclaim, ¶ 32).

3.  Following the decision of Hearing Officer Berman, information concerning the due process proceeding and educational costs for the program to be provided to the Student were provided by North Reading to the North Reading Transcript, a newspaper of general circulation in North Reading. (Counterclaim, ¶ 34). The parents allege that this was done by North Reading in retaliation for their successful invocation of due process procedures to protect the right of their son to a free and appropriate public education. Parents further allege that they and their child have been harmed as the result of the release of this information to the newspaper. (Counterclaim, ¶43)

## ARGUMENT

**1.  THE COURT SHOULD LIMIT ITS CONSIDERATION OF THE MOTION TO DISMISS TO THE ALLEGATIONS IN THE COUNTERCLAIM AND SHOULD DISREGARD THE ADDITONAL MATERIALS SUBMITTED BY THE SCHOOL COMMITTEE.**

On a motion to dismiss, the court "must accept the complaint's allegations as true, indulging all reasonable inferences in favor of [the plaintiff]." *Kiely v. Raytheon*, 105 F.3d 734, 735 (1st Cir.1997). Dismissal is proper only if "the factual averments do not justify recovery on some theory adumbrated in the complaint." *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999), *cert denied*, 528 U.S. 1062, 120 S.Ct. 616, 145 L.Ed.2d 511 (1999).

In considering a Motion to Dismiss, a court should accept well-pleaded facts as true and indulge all reasonable inferences there from in the plaintiff's favor. *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir.1998). Those facts can be augmented with facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice. See *In re Colonial*

3

*Mortgage Bankers Corp.*, 324 F.3d 12, 14 (1st Cir.2003); see also *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir.1998) ("When, as now, a complaint's factual allegations are expressly linked to--and admittedly dependent upon--a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."). A district court may consider the whole of a document integral to or explicitly relied upon in a complaint, even if that document is not annexed to the complaint. *See: Clorox Co. P.R. v. Proctor & Gamble Co.*, 228 F.3d 24, 32 (1st Cir.2000).

The Defendants-in-Counterclaim have sought to have the Court consider the decision of the Hearing Officer in the due process proceeding (Attachment 3 to the Memorandum in Support of the Motion to Dismiss) and a newspaper article (Attachment 4 to the Memorandum). These documents are not attachments to the Counterclaim and are not documents that are integral or explicitly relied upon in the Counterclaim. Neither of these documents meets the criteria for consideration as additional materials under the standards set forth in the decisions of the First Circuit. These documents should not be considered at this point in the consideration of the Motion to Dismiss and should be struck from the memorandum as extraneous materials at this point in time. This matter is unlike *Beddall v. State St. Bank & Trust Co.*, as the Parents object to the inclusion of these documents and their consideration.[1]

The Defendants-in-Counterclaim have also stated as "Facts" matters not

---

[1] In *Beddall*, the Court noted that the plaintiffs had not filed a Motion to Strike the trust agreement that the defendant had attached to it 12(b)(6) motion to dismiss. *Id.*, at 17.

4

contained in the pleadings of either party.[2] The Parents respectfully request that the Court disregard these assertions and confine its inquiry to the factual averments of the Counterclaim. The allegations contained in the Counterclaim are sufficient to support the claim for relief sought therein.

### 2. THE COUNTERCLAIM OF THE PARENTS SHOULD BE ALLOWED TO PROCEED AS EXHAUSTION FOR THIS CLAIM IS NOT REQUIRED BY 20 U.S.C. §1415(l).

The Parents have alleged in Count II of their Counterclaim that the North Reading School Committee has retaliated against them and their minor child for their exercise of due process rights. The acts of retaliation of the North Reading Public School District, which occurred following the exhaustion of claims regarding the Student's right to a free and appropriate public education, are violations of the provisions of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(a), which prohibits discrimination on the basis of disability.

The Rehabilitation Act incorporates the "remedies, procedures and rights set forth in Title VI of the Civil Rights Act of 1964"(29 U.S.C. §794(a)(2)), including the anti-retaliation regulation, 34 C.F.R. §100.7(e). This provision prohibits intimidation, threats, coercion or discrimination against a person who has made a complaint, testified, assisted or participated in any matters in a proceeding or hearing seeking to address rights protected by the civil rights laws.

---

[2] The Memorandum of Law in Support of the Motion to Dismiss cites "facts' which are not established by the relevant pleadings. For example, North Reading takes this opportunity to outline "significant errors" in the Hearing Officer's decision. The Parents contend that this discussion is inappropriate in the context of the pending Motion to Dismiss and should be disregarded. Parents strongly disagree with the characterization of the Hearing Officer's findings and evidence and alleged in North Reading's memorandum. Further, the Memorandum states as a fact that the decisions of Hearing Officers are posted on a website. This information is outside of the record and should not be relied upon in determining whether the Parents have alleged facts that state a claim for relief.

The First Circuit Court of Appeals has expressly determined that parents of students with disabilities may bring an action under Section 504 for retaliation in their exercise of rights to obtain a free and appropriate public education for that student. *Weber v. Cranston School Committee, et al.* 212 F.3d 41, 48 (1st Cir. 2000)

The Defendant-in-Counterclaim alleges that the Parents must first exhaust administrative remedies pursuant to 20 U.S.C. §1415(b)(6) before proceeding with an action in court to address their claim of retaliation. The Parents agree that claims relating to the "identification, evaluation or educational placement of a child with a disability" must be presented to the state due process system(in the case of Massachusetts, the Bureau of Special Education Appeals) by operation of 20 U.S.C. §1415(l). This statutory provision requires that:

> before filing of a civil action . . .seeking relief that is
> availble under this subchapter, the procedure under
> subsection (f) and (g) of this section shall be exhausted to
> the same extent as would be required had the action been
> brought under this subsection.

In *Weber v. Cranston School Committee*, 212 F.3d 41, the First Circuit held that the parent in that matter had failed to exhaust administrative proceedings before bringing her claim for retaliation. However, in *Weber* the parent had not brought any due process action but had elected to proceed directly to federal court after filing unsuccessful complaints with the state's problem resolution system, not the due process system. No issues concerning the appropriateness of the student's special education program had ever been presented to a state administrative body for review. The parent's claims related directly to her efforts at advocacy at the school for her child – not in the due process system as in the present matter. In this matter, the parent has brought such a due process

6

action and has alleged acts of retaliation that took place subsequent to the successful completion of that due process proceeding.

The First Circuit has recognized in the context of employment discrimination that acts of retaliation that take place after an discrimination complaint has been filed can later be litigated in federal court without having to exhaust the claim of retaliation in the administrative proceeding. See, *Clockedile v. New Hampshire Department of Corrections*, 245 F. 3d 1 (1st Cir. 2001), citing decisions by nine Circuit Courts: *Kirkland v. Buffalo Bd. of Educ.*, 622 F.2d 1066, 1068 (2d Cir.1980) (*per curiam*); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir.1984); *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir.1992); *Gottlieb v. Tulane Univ.*, 809 F.2d 278, 284 (5th Cir.1987); *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir.1989); *Wentz v. Maryland Cas. Co.*, 869 F.2d 1153, 1154 (8th Cir.1989); *Anderson v. Reno*, 190 F.3d 930, 938 (9th Cir.1999); *Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 864 F.2d 680, 682 (10th Cir. 1988); *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 168-69 (11th Cir.1988).

The rationale expressed in *Clockedile* to retaliation in employment discrimination claims is equally applicable in this situation where the Parents have pursued a due process claim and the school district has retaliated against them for being successful in that claim and then initiated the instant proceeding. In *Clockedile*, the Court stated that: "[r]etaliation uniquely chills remedies; and by retaliating against an initial administrative charge, the employer discourages the employee from adding a new claim of retaliation." Thus, it is appropriate to allow employees (or Parents) to pursue retaliation complaints in a court proceeding following administrative exhaustion of the underlying discrimination claim but where retaliation was not raised in the administrative proceeding.

This is particularly true where, as in this matter, the underlying retaliation complaint does not require the court to determine issues concerning the appropriateness of the student's individualized education plan (IEP). The Parents' Counterclaim does not concern a disagreement regarding the content of an IEP but rather relates to the actions of the school district following a successful due process hearing. In contrast, the vast majority of claims dismissed by a federal court based on the plaintiffs' failure to exhaust administrative remedies arise from a parent's dissatisfaction with the content of an IEP. This case is unlike *Frazier v. Fairhaven School Committee*, 276 F.3d 52, 61 (1st Cir. 2002), where the parents' Rehabilitation Act claim was rooted in alleged violation of IDEA, thereby requiring exhaustion. Nor is it similar to *Rafferty v. Cranston Public School Committee*, 315 F.3d 21, 26-27 (1st Cir. 2002) where the parent was seeking reimbursement for private school tuition. It is also dissimilar to cases in other circuits where exhaustion was relied upon to dismiss claims. *See, e.g.: Polera v. Bd. of Educ.*, 288 F.3d 478, 488 (2d Cir. 2002)(failure to provide study materials and tutor under nonspecific IEP); *Hope v. Cortines*, 69 F.3d 687 (2d Cir. 1995)(failure to provide appropriate educational services in IEP); *M.M. v. Sch. Dist. Of Greenville Co.*, 303 F.3d 523, 536 (4th Cir. 2002)(failure to include services in IEP); *Pace v. Bogalusa City School Board*, 325 F.3d 609, 622 (5th Cir. 2003) (IEPs lacked adequate goals, services); *Charlie F. v.. Bd. of Educ.*, 98 F.3d 989, 992-93 (7th Cir. 1996) (seeking compensatory education services based on harassment).

Exhaustion should not be required where the purposes of the exhaustion doctrine would not be served by requiring exhaustion. Generally exhaustion is required because of the deference given to the expertise of hearing officers at the due process level. The First

Circuit has repeatedly indicated this degree of deference, for example, stating in *Lenn v. Portland School Committee:* "[w]hile the IDEA envisions judicial review, the statute 'is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.'" 998 F.2d 1083, 1086 (1st Cir.1993) (quoting *Board of Education v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)). In *Carey v. Maine School Administrative District #17*, 754 F.Supp. 906, 923 (D.Me.1990) the District Court indicated that this deference is required by IDEA, stating that "Congress made abundantly clear that courts should decide [IDEA] cases only after a serious and thorough examination of the records of the proceedings undertaken by education professionals and the insights of those experts into the problems of the subject child".

This matter is unlike *Carey* where the court held that administrative proceedings were necessary to "assess the propriety of the school district's educational placement decision, and consequently the propriety of reimbursing parents' educational expenses." *Id*. This case is also dissimilar to *Frazier* or most cases raising claims concerning students with disabilities. In determining whether the school district retaliated against the parents there is no need for "knowledgeable, yet independent, education professionals" as "the first line of review" to evaluate whether the educational services provided actually were adequate. *Id*.

This Court will be required to review the decision of Hearing Officer Sara Berman in order to evaluate the complaint for judicial review of the North Reading School Committee. The Court will give deference to the Hearing Officer's decision,

9

which was made after careful consideration and the weighing of testimony by a number of witnesses, including educational experts.

However, this Court will not need to resolve that dispute to determine whether the North Reading School Committee released information in an attempt to intimidate, coerce or harass the Parents and Student following the decision of the Hearing Officer. The Court is as well-situated to resolve this factual dispute as a Hearing Officer at the Bureau of Special Education Appeals. The determination will not require testimony by educational experts or the review of educational records. The Parents should not be required to exhaust administrative remedies under IDEA simply because their claim relates in a very peripheral manner to their son's education, particularly since they have just been through a due process proceeding in which they prevailed. Where the dispute does not concern a student's particular special education needs, reference to the special education administrative process is inappropriate.

Other courts have heard claims brought by a parents or students which rest on violations of Section 504 without requiring exhaustion. The Sixth Circuit, in *Gean v. Hattaway*, entertained the plaintiffs' claims under Section 504 of the Rehabilitation Act, even though the plaintiffs had also alleged related violations under IDEA. 330 F.3d 758, 773-775 (6th Cir. 2003). The plaintiffs were challenging the use of social security benefits to offset the costs of plaintiffs' placements at residential treatment facilities. *Id.* The *Gean* court recognized that the exhaustion of administrative remedies is not a prerequisite to private enforcement of rights under the Rehabilitation Act. 330 F.3d at 775. The Sixth Circuit similarly has held that exhaustion should not be required before filing a due process claim based on injuries arising from the use of corporal punishment.

*Webb v. McCullough*, 828 F.2d 1151, 1159 (6th Cir. 1987).

Several other courts have similarly determined that plaintiffs need not exhaust administrative procedures when seeking redress for injuries that "cannot be redressed to any degree by IDEA's administrative procedures and remedies ...." *Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268, 1274-75 (10th Cir. 2000). The *Padilla* court did not require exhaustion where the plaintiff sought damages for injuries sustained when placed in a closet, even though she was a person with a disability receiving special education services. *Id. See also: Witte v. Clark Co. Sch. Dist.*, 197 F.3d 1271, 1275-76 (9th Cir. 1999)(exhaustion unnecessary to redress physical abuse and injuries); *Meers v. Medley*, No. 2003-CA-001003-MR, 2004 WL 241089 (Ky. Ct. App. Oct. 29, 2004) (student challenging teacher's mental and physical abuse need not exhaust IDEA procedures). As the court recognized in *McCormick v. Waukegan Sch. Dist. #60*, an exhaustion requirement is inappropriate where no change to the student's IEP could remedy the damage done. 374 F.3d 564, 569 (7th Cir. 2004).

Exhaustion should not be required where the plaintiff seeks enforcement of protections afforded outside of IDEA. The Eighth Circuit entertained the discrimination claim of the plaintiff under Section 504, even though the court recognized that the plaintiff had not retained his rights under IDEA. *M.P. v. Independent Sch. Dist. No. 721*, 326 F.3d 975, 981-83 (8th Cir. 2003). This refusal to require exhaustion for Section 504 complaints has been applied by the district courts as well. For example, the court in *McKay v. Winthrop* held that the plaintiff need not exhaust administrative procedures where she seeks damages for school program and building inaccessibility through Section 504 of the Rehabilitation Act and Title II of the ADA. No. 96-131-B, 1997 WL 816505 at

11

\* 3 (D. Me. June 6, 1997). Similarly, plaintiffs alleging violations of Section 504 of the Rehabilitation Act and the ADA, based on past discrimination in the form of denying parents the opportunity to observe their children, were not required to exhaust administrative remedies under IDEA. *Glass v. Hillsboro Sch. Dist.*, No. 00-1058-JO, 2000 WL 1877647 (D. Ore. Dec. 27, 2000).

The Parents should not be required to exhaust administrative remedies which cannot provide them with the relief they seek. Even if resort to the special education administrative process is possible, a plaintiff does not need to exhaust potential administrative remedies where such an exercise would be futile. *Weber*, supra at 52; *Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1094 (1st Cir.1989). As stated by Senator Williams, the author of the 1975 Special Education Act, "exhaustion of the administrative procedures ... should not be required for any individual complainant filing a judicial action in cases where such exhaustion would be futile either as a legal or practical matter." 121 Cong. Rec. 37416 (1975).

Exhaustion is not required where the administrative remedy could not result in adequate relief for the plaintiff. *Kerr Center Parents Assoc. v. Charles*, 897 F.2d 1463 (9th Cir. 1990). The Kerr court refused to require exhaustion by parents challenging the lack of funding for educational services for their children. Id. at 1469-70. The legislative history of IDEA supports the notion that exhaustion should not be required where it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought). H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985).

It is clear that the Bureau of Special Education Appeals could not order damages

for the parents. See: *In Re:Nahant Public Schools*, BSEA # 04-1098 (2003); *In Re: Sharon Public Schools*, BSEA # 02-1490 (2002); *In Re: Natick Pub. Sch.*, 6 MSER 48 (BSEA 99-3852) (2000); *In Re: Brockton Pub. Schs.*, 6 MSER 17 (BSEA 00-2572) (BSEA 00-2572) (2000); *In Re: Wareham Pub. Schs.*, 5 MSER 154 (BSEA 00-0679) (1999). If this matter returned to the Bureau, no relief could be provided to the Parents. The Bureau would be limited to fact finding, if it assumed jurisdiction over this matter at all.

Although the First Circuit ruled in *Frazier v. Fairhaven*, 278 F.3d 52 (1st Cir. 22002) that the absence of the availability of money damages at the BSEA does not excuse exhaustion, this determination should be reconsidered in light of the ruling in *Nieves-Marques v. Puerto Rico*, 353 F.3d 108, 116 (1st Cir.2003). In *Nieves-Marques*, the First Circuit held that "tort-like money damages, as opposed to compensatory equitable relief, are not available under IDEA." (Id. at 124). By ruling out monetary damages under IDEA, the Court has eliminated the possibility that parents will try to file IDEA –related monetary claims directly, since such claims are no longer permissible. However, this does not eliminate monetary damages for non-IDEA claims under Section 504 where the issue is intentional discrimination or retaliation.

Requiring the Parents to return to the Bureau of Special Education Appeals following a decision in their favor when a school district takes action to intimidate or threaten the parents undermines the basic integrity of the hearing process and is in contravention of the basic principles of IDEA. See: *Nieves-Marques v. Puerto Rico*, 353 F.3d 108, 116 (1st Cir.2003). Given the nature of this claim that arose after Parent had exhausted due process proceedings, the Parents should not be required to once again

return to due process procedures to exhaust administrative remedies for their unrelated claim of retaliation by the North Reading School Committee following a successful due process proceeding. If exhaustion is required in this setting, schools could keep parents in a loop of returning to due process. This was recognized by the First Circuit in *Nieves-Marques*, when the Court found that return to due process is not required to raise a claim of failure to comply with a due process decision. This Court should follow that logic and determine under the facts of this case that a return to due process is not required where Parents allege retaliation following the completion of administrative proceedings.

### 3. THE PARENTS HAVE ALLEGED FACTS THAT ESTABLISH A CLAIM OF RETALIATION IN VIOLATION OF SECTION 504.

The North Reading School Committee acknowledges in its Memorandum in Support of the Motion to Dismiss that the Parents have satisfied two of the four elements required to establish a retaliation claim under Section 504: that they were engaged in protected activity and that the alleged retaliator know that the plaintiff was involved in protected activity. The School Committee maintains that the Parents are unable to establish as a matter of law that the School Committee undertook some "action disadvantageous" to the Parents.

The parents have alleged that the School Committee released protected information to the press (Counterclaim, ¶65) in retaliation for their success in the due process proceeding. This was certainly an action that was disadvantageous to the Parents. The Parents should be allowed to produce facts regarding the nature of the news article, the size of the town, reactions that they received from neighbors, friends, business associates and relatives and other facts relative to their claim. The Court must review the Parents allegations, accepting those allegations as true and indulging all reasonable

14

inferences in favor of the parents. *Kiely v. Raytheon*, 105 F.3d 734, 735 (1st Cir.1997). Dismissal is proper only if "the factual averments do not justify recovery on some theory adumbrated in the complaint." *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999), cert denied, 528 U.S. 1062, 120 S.Ct. 616, 145 L.Ed.2d 511 (1999).

The School Committee alleges that the alleged release of information cannot be regarded as retaliation because the decisions of Hearing Officers are public documents. This assertion misstates the law. The School Committee asserts that 20 U.S.C. §1415(h) makes hearing decisions public. This section establishes safeguards for due process hearings including:

> (1) the right to be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of children with disabilities;
> (2) the right to present evidence and confront, cross-examine, and compel the attendance of witnesses;
> (3) the right to a written, or, at the option of the parents, electronic verbatim record of such hearing; and
> (4) the right to written, or, at the option of the parents, electronic findings of fact and decisions, which findings and decisions--
>> (A) shall be made available to the public consistent with the requirements of section 1417(b) of this title (relating to the confidentiality of data, information, and records); and
>> (B) shall be transmitted to the advisory panel established pursuant to section 1412(a)(21) of this title.

20 U.S.C. §1415(h).

Section 1417 requires that the " Secretary shall take appropriate action, in accordance with section 1232g of this title, to ensure the protection of the confidentiality of any personally identifiable data, information, and records collected or maintained by the Secretary and by State educational agencies and local educational agencies pursuant to this subchapter." This provision has been interpreted as establishing a right to confidentiality in special education proceedings that outweighs the right of the press

under the First Amendment. *Webster Groves School Dist. v. Pulitzer Pub. Co.*, 898 F.2d 137 (8th Cir. 1990). At least one court has found this provision to establish a right of privacy regarding these proceedings and denied a motion to dismiss (for failure to state a cause of action) an action where a school district released information concerning a due process hearing to the press. See: *Sean R. v. Board of Education of Woodbridge*, 794 F. Supp. 467 (D.Conn. 1992).

Section 1417 and Section 1415 clearly require that the release of any information (including due process decisions) be done in such a manner that personally identifiable information is protected. The Parents should be allowed to demonstrate in these proceedings the nature of the information that was released and the effect that the release of said information had on their engagement in further protected activity. The District alleges that because names were not released that confidential information was not released. This ignores the effects of the release of specific facts in a small community. On the basis of the pleadings it would be improper to rule out that confidential information was not released and printed by the press. The Motion to Dismiss should be denied as the School Committee has failed to show that the Parents have not alleged retaliation as a mater of law.

### Conclusion

For the foregoing reasons, the Parents respectfully request that the Motion to Dismiss of the North Reading School Committee be denied.

Date: 10/7/2005

Respectfully submitted,
Courtney and Timothy Grafton
By their attorney,

Tim Sindelar, BBO #557273
Ames, Hilton, Martin & Sindelar
22 Putnam Avenue
Cambridge, MA 02139
(617) 871-2140
Fax: (617) 871-2141

16

Certificate of Service

I hereby certify that I have served a copy of the foregoing documents on all counsel of record for each party by first class mail, postage prepaid.

Date: 10/07/2005

_____
Tim Sindelar