UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

NORTH READING SCHOOL COMMITTEE,
Plaintiff,

v.                                                      Civ. No. 05-11162 RCL

BUREAU OF SPECIAL EDUCATION APPEALS
et al
Defendants.

_____

## MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION OF TIMOTHY GRAFTON AND COURTNEY GRAFTON TO NORTH READING SCHOOL COMMITTEE'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The Student, M.G., and his Parents oppose the Motion of the North Reading School Committee ("District") for Summary Judgment for the reasons stated below. The District has failed to prove[1] that that there is any reason to overturn the findings and conclusion of the state Hearing Officer and her decision that reimbursement for the Student's placement at Landmark was required by a proper application of both IDEA and state special education law. The District's Motion should be denied in its entirety.[2]

### FACTS

The parties agree that there are no material facts in dispute as to the issues raised in the Motion for Summary Judgment and that this case is ripe for partial summary

---

[1] "[T]he burden of proof is on the party who seeks to overturn the findings and decision of the agency." Burlington v. Department of Education, 736 F.2d 773, 794, n.27 (1st Cir. 1984).

[2] The District characterizes its Motion as a Motion for Summary Judgment. However, since the Motion does not address the Parent's counterclaims for attorney fees and costs and for damages for retaliation, the Motion should be characterized as a Motion for Partial Summary Judgment.

judgment.   The parties do draw very different inferences from the exhibits and testimony

in the record.   The District has not included all relevant facts from the record in its

Statement of Material Fact and the Parents have therefore provided a Supplementary

Statement.  At other times the District has mischaracterized certain facts.  The Parents

will address these mischaracterizations in the context of their discussion of the legal

issues presented in this action and have indicated in their Concise Statement the specific

disagreement.

## ARGUMENT

**I.  The Court should give deference to the Hearing Officer's findings, adopting a standard of review that reflects the deference to be provided to the hearing officer, particularly as to the assessment of credibility of witnesses.**

The Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*.

("IDEA" or "the Act") requires that any state receiving federal money provide a free and

appropriate public education ("FAPE") to any child with a learning disability. *See* 20

U.S.C.§ 1415(a). The adequacy of an individual education plan may be challenged before

the state's education agency, and a party may seek further review in state or federal court.

*See* 42 U.S.C. § 1415 (b)(2), (e)(2). The reviewing court must obtain the administrative

record and base its decision on the preponderance of the evidence.  *See* 42 U.S.C. § 1415

(e)(2).

Though the IDEA provides for judicial review, the statute "is by no means an

invitation to the courts to substitute their own notions of sound educational policy for

those of the school authorities which they review."  *See Board of Educ. v. Rowley*, 458

U.S. 176, 206 (1982).  "The court's focus," it is worth emphasizing, "is upon the

educational program which finally emerges from the administrative review process, not

the IEP as originally proposed." *See Roland M. v. Concord Sch. Comm.*, 910 F.2d 983,

988 (1st Cir. 1990); *see also Springdale Sch. Dist. v. Grace*, 693 F.2d 41, 43 (8th Cir.

1982), *cert. denied*, 461 U.S. 927 (1983). The reviewing court should "recognize the

expertise of the administrative agency," *Burlington v. Dep't of Educ.*, 736 F.2d 773, 779

(1st Cir. 1984), *aff'd*, 471 U.S. 359 (1985), remaining mindful that "the judge is not at

liberty to turn a blind eye to administrative findings or discard them without sound

reason." *See Lenn v. Portland Sch. Comm.*, 998 F.2d 1083, 1087 (1st Cir. 1993).

The court should afford additional deference to the findings of the Hearing

Officer that are based upon the testimony of witnesses at the hearing. The credibility of

the expert witnesses is a matter for determination by the Hearing Officer, who had the

opportunity to hear and evaluate their demeanor and persuasiveness. *See H.W. v.

Highland Park Bd. of Educ.*, 108 Fed. Appx. 731, 2004 U.S. App. LEXIS 18625 (3d Cir.

2004) (in a "battle of the experts," the Hearing Officer's  credibility findings are entitled

to deference); *Shore Regional High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194 (3d Cir. 2004)

(the "due weight" standard in a "battle of the experts" requires the court to provide a

substantial reason for refusing to credit the witnesses upon whom the ALJ clearly relied);

*A.B. ex rel. D.B. v. Lawson*, 354 F.3d 315, 327-28 (4th Cir. 2004) (credibility

determinations implicit in a hearing officer's decision are as entitled to deference as

explicit findings).

**II.  The Parents claim to reimbursement is not barred by a failure to provide timely
notice to the District of their intent to enroll the Student in a private school.**

The District argues that the parents did not provide proper notice of unilateral

transfer of the Student and that 20 U.S.C. §1412(a)(10)(c) and *Greenland Sch Dist. v.

Amy N.*, 358 F.3d 150 (1st Cir. 2004) accordingly bar the equitable remedy of tuition

reimbursement ordered by the Hearing Officer. *See* N.R. Mem. at 3. In *Greenland*, the First Circuit held tuition reimbursement unavailable to parents who had removed their child from the public schools without notifying the school district of the need for special education services. *Id.* The District's argument that the *Greenland* holding bars relief here is without merit, because the District explicitly waived this claim in the administrative hearing. Moreover, an examination of the facts reveals that *Greenland* does not control.

**A.    The District is barred from asserting this defense because of the waiver of the issue in the administrative hearing.**

The District waived all claims regarding notice and eligibility pursuant to 20 U.S.C. §1412(a)(10)(c) at the hearing below. The Parents acknowledge that they did not provide formal written notice to North Reading before deciding to enroll the Student at Landmark School to address his special education needs for the 2003-2004 school year but state that notice was given for the 2004-2005 school year. The issue of adequate notice was raised early in these proceedings and was discussed at a prehearing conference with the BSEA Hearing Officer on December 9, 2004. The parties agreed to resolve the issue prior to any hearing and to address the issue by a motion for partial summary judgment. This agreement was memorialized in an Order of the Hearing Officer on December 9, 2004 requiring the parties to produce a joint stipulation of facts by December 24, 2004 and supporting memoranda no later than December 31, 2004. Administrative Record ("AR") 32.

The parents then elected not to pursue a claim for reimbursement for the 2003-2004 school year, with the understanding that the School District had no objections to the

notice given for the 2004-2005 school year. A letter to the Hearing Officer dated
December 22, 2004 from Parent's counsel set forth that decision. AR 35. This matter
was then discussed in a Conference Call with the Hearing Officer and counsel for both
parties on December 23, 2004. That same day, the Hearing Officer entered an Order
indicating that as a result of the parents' decision not to seek reimbursement for the 2003-
2004 school year, "the parties will not be seeking partial summary judgment on notice
issues concerning reimbursement." AR 36. This history is also traced in the Decision of
the Hearing Officer. AR 108.

On the first day of the hearing, a discussion took place as to the effect of the
decision to waive reimbursement for the 2003-2004 school year with regard to the
admissibility of evidence concerning the actions (or inactions) of the School District
during the 2003-2004 school year. As the following colloquy illustrates, the parties and
the hearing officer discussed and resolved the issue of notice before the hearing:

> OFCR. BERMAN: . . . And then, what I would ask the district is whether the
> district – how can I put this? If the parents – if I tell the parents that they can't
> present any evidence on anything pertaining to that, those last few months of the
> 2003/2004 school year, have they also effectively waived any right to present
> evidence that the current – as to notice and everything else – as far as informing
> the school district that they're going to continue this unilateral placement, such
> that they can't make any claims for the 2004/2005 school year?

> MR. NUTTALL:  No.  And I think that that is directly on point on this, as well,
> because Mr. Sindelar did in fact give us written notice, in the summer of 2004,
> prior to the 2004/2005 school year.  There had been no notice prior to that point in
> time.  And that was initially what we were going to address in the summary
> judgment motion.    . . .

> MR. NUTTALL: So we had initially addressed the – or were going to address the
> issue of notice, by way of a summary judgment motion.  And that was what was –
> Mr. Sindelar and I had a discussion relative to this, and that is where we entered
> into the understanding that there would be no argument relative to 2003/2004,
> except as it pertains to child find.

OFCR. BERMAN:  Right.

MR. NUTTALL:  So the notice, to the extent that it was required in this case, the district will say was complied with as of the summer of 2004, prior to the start of the 2004/2005 school year, but not prior to that point in time.

OFCR BERMAN:  Okay.  So that, in other words, there is going to be no issue that the parents didn't give proper notice for 2004/2005.

MR. NUTTALL:   No.  They did give notice for 2004/2005.

Record Transcript ("RT"), Vol. 1, 40-43.  The District's Closing Memorandum in the due process hearing does not mention the issue of eligibility for reimbursement. AR 48-65.[3] The District did not claim at any other time during that proceeding that the parents were barred from seeking tuition reimbursement for the Student's placement at Landmark.[4] The District raised the issue for the first time in its Motion for Summary Judgment.  The record reveals that the District had previously considered the defense of lack of notice and expressly waived it.

    "[C]ourts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made appropriate at the time of its practice."  *See United States v. Tucker Truck Lines*, 344 U.S. 33, 37 (1952) (in order to raise issues reviewable by the courts, orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction); *David D. v. Dartmouth School Committee*, 775 F.2d 411, 424 (1st Cir. 1985) (for issues to be preserved for judicial review they must

---

[3]   The District made three arguments in the Closing Memorandum: 1) that the Landmark School was overly restrictive and inappropriate; 2) that the North Reading Program provided a free and appropriate public education and 3) that claims for compensatory services for alleged violations of child find requirements should be denied.
[4]   The District acknowledges that it did not raise this issue in the administrative hearing in footnote 4 on page 11 of its Memorandum in Support of the Motion for Summary Judgment.

first be presented to the hearing officer); *Colin K v. Schmidt*, 715 F.2d 1, 5-6 (1st Cir. 1983) (same).[5]

The District's claim that the Hearing Officer erred is similar to an argument addressed in *Burlington*. *Burlington*, 736 F.2d. at 782. There, the Town of Burlington contended that it had not been provided adequate notice of procedural claims being made by a student and his family. The First Circuit pointed out that the Town had already argued the procedural questions at the hearing and therefore could not now claim to be "surprised" by those claims. Raising the issue on appeal was disallowed because it was "disingenuous." *Id.* at 782.

Significantly, the First Circuit also cautioned that a reviewing court must be careful not "to change the character of the hearing from one of review to a trial de novo." *Id.* at 791. The District's assertion that it can raise issues that were waived (either explicitly or implicitly) in the administrative hearing is tantamount to allowing it to have a trial *de novo*. The District cites a single decision for its assertion that this issue can be raised on review since the standard for the review is *de novo*. *Manchester School District v Crisman*, 303 F. 3d 1 (1st Cir. 2003). However, this citation is inapposite. There is no

---

[5] *See also, Pollowitz v. Weast*, 90 Fed. Appx. 438, 186 Ed. Law Rep. 90 (4th Cir. 2001)(unpublished opinion); *Leonard v. McKenzie*, 869 F.2d 1558, 1563 (D.C. Cir. 1989) (holding that a student's transition issue could not serve as basis for upsetting hearing officer's decision because the transition issue had not been argued before the hearing officer); *R.G. v. Glen Ridge Bd. of Educ.*, slip op., 2005 WL 3274857, *3 (D.N.J. Dec. 2, 2005) (holding that pursuant to the IDEA failure to raise an issue at the administrative level results in waiver of the issue in a civil action before a federal district court); *Doe v. Arlington County School Bd.*, 41 F.Supp.2d 599, 607 (E.D.Va. Mar. 18, 1999) (holding that "stay put" arguments arising under IDEA could not be raised in the federal district court because they had not been made in the administrative proceedings below); *Bruschini v. Bd. of Educ. of Arlington Cent. School Dist.*, 911 F.Supp. 104, 108 (S.D.N.Y. Nov. 3, 1995) (holding that in an action arising under IDEA stipulations made in "open court" at the administrative level were binding and therefore should not be upset by the federal district court); *Remis v. New Jersey Dep't of Human Services*, 815 F.Supp. 141, 143, n.3 (D.N.J. Mar. 2, 1993) (holding that a district court may not set aside the result of administrative proceedings on grounds that were never raised or were uncontested before the administrative law judge because doing so would be both unfair to the Hearing Officer and unwieldy).

indication in *Crisman* that a reviewing court may entertain issues that were either waived

or not brought forward in the administrative proceedings. [6]

 Nor does the plain error rule save the District from its failure to raise the issue

sooner.  "For there to be plain error, there must (1) be error, (2) that is plain, (3) that

affects the substantial rights of the party, and (4) that seriously affects the fairness,

integrity, or public reputation of a judicial proceeding." *Brough v. Imperial Sterling Ltd*.,

297 F.3d 1172, (11th Cir. 2002) (internal citations omitted).[7]  The failure of the Hearing

Officer to apply *Greenland* as a bar to reimbursement, particularly in light of the

District's explicit waiver of any claims relating to notice for the 2004-2005 school year,

meets none of these requirements.  It is not error, it is clearly not plain, and it does not

seriously affect the fairness, integrity or reputation of the hearing process.

**B.  The Parents are eligible for reimbursement of their expense of enrollment of the Student at Landmark School**.

**1.  Reimbursement is not barred, because the Student received special education services from the District**.

 The District maintains that the Parents are barred from seeking reimbursement by

virtue of the First Circuit's interpretation of 20 U.S.C. § 1412(a)(10)(C)(ii) in *Greenland*.

In *Greenland*, the First Circuit stated that "tuition reimbursement is only available for

children who have previously received 'special education and related services' while in

---

[6] In *Crisman*, the First Circuit explicitly noted that the "case involves only questions of law-the interpretation of federal and state statutes" *Id* at  9.  The Court applied a "pure" *de novo* determination to an interpretation of the statute, heeding *Rowley's* admonishment "when reviewing cases under the IDEA, to take great care not to displace the educational policy judgments made by state and local public education officials."  *Id.* (citing *Rowley,* 458 U.S. at 206).

[7] *See also Acevedo-Garcia v. Monroig*, 351 F.3d 547 (1st Cir. 2003) (applying the standard in declining to revise multi-million dollar award against the city where jurors may have double calculated portions of the damages verdict); *Fraser v. Major League Soccer*, 284 F.3d 47 (1st Cir. 2002) (applying the standard in declining to find error in certain jury instructions given in antitrust case against major league soccer); *Dekalb County School District v. M.T.V.,* 164 Fed. Appx. 900, 2006 WL 197338 (11th Cir. 2006) (unpublished opinion) (applying the standard in a special education review to decline to address an issue not previously raised in the proceedings).

the public school system (or perhaps those who at least timely requested such services while the child is in public school)." *Greenland*, 358 F.3d at 159-160.  But the District's analysis omits a salient fact:  the Student was a special education student with an IEP enrolled in the District for the school years from 1998 through June 2001. AR 111, 263-79;  RT, Vol. 2, 130-31.  Because he had "previously received special education and related services" from the District as a preschool student, Student meets the threshold requirement.  Therefore, the bar to reimbursement does not apply.

**2.  The equities in this case do not require that reimbursement be denied because of the timing of the notice provided to the school district**.

The notice provision of the IDEA does not bar reimbursement in all situations, but directs that reimbursement "may" be denied if there is a failure to provide proper notice. *See* 20 U.S.C. §1412(a)(10)(C). It would be wrong to exercise that discretion to deny the parents reimbursement for placement at Landmark in this case, given the facts of this particular case.  Here, the District had the opportunity to serve the student as a preschool student, and failed to identify his language-based learning disability during that time. The District did not offer an intensive program and the parents believed that a move to a smaller environment with a full day kindergarten program would help resolve undiagnosed learning difficulties. RT, Vol. 2, 131-132, 136-137,[8] AR. 11. During the student's kindergarten and first grade year at Meritor Academy, the parents supplemented services with private tutoring (for reading) and private speech and language therapies. *Id.*

The Parents did notify the District when it became apparent that the student required more than the small classroom environment at Meritor Academy.  Indeed, the

---

[8]  The Parents disagree with the assertion of the District that the move to Meritor was not based upon "special education" needs.  The Parents were clearly seeking more intensive services than were available in the North Reading Schools and continued to supplement the program at Meritor with outside speech therapy and later tutoring for reading.

Hearing Officer made specific factual findings regarding the family's contacts with the District even before Landmark was being considered. AR 113-114. She found that in September 2003, the student's mother contacted Mr. Jim Canino, Assistant Director of Pupil Personnel Services for North Reading; discussed the Lappen evaluation; and mentioned Landmark School as a possible placement for Student. AR 113. Mr. Canino told the mother about North Reading's language based elementary classroom, and she asked to observe it. *Id.* Mr. Canino then informed her that she could do so after the District had received Dr. Lappens' report. *Id.* The parents provided the District with a copy of Dr. Lappen's report when it became available, and with a letter requesting a TEAM meeting. *Id.* at ¶18. Notice of the decision to enroll was provided within days of that decision. The District could have initiated the evaluation process once the initial contact with Jim Canino was made in September 2003 and in fact should have been holding annual TEAM meetings to develop IEPs during the period that the Student was enrolled in Meritor.

Massachusetts requires the District to offer a free and appropriate public education to all students who reside in the District. See, MGL c.71B, Sec. 1 (defining "School age child with a disability" as "a school age child in a public or **non-public school setting**") (Emphasis added). MGL c. 71B, Sec. 3 requires that "the school committee of every city, town or school district shall identify the **school age children residing therein who have a disability**, as defined in section 2, diagnose and evaluate the needs of such children, propose a special education program to meet those needs,

provide or arrange for the provision of such special education program."[9] (emphasis
added) These provisions have been held to require school districts to offer pupils enrolled
in private schools an IEP that offers at least a meaningful opportunity to participate in the
public school program. *See In Re Medford*, 38 IDELR 24 (BSEA # 02-1855, 2002).

The District offered no justification for its failure to convene the Team on an
annual basis and propose services for the Student after the Student was enrolled in the
Meritor Academy.  The District did not offer an IEP during the 2002-2003 school year
nor during the 2003-2004 school year until months after the parents initially approached
the District with their concerns.  The District should have provided some services to the
Student from September 1, 2002 through its offer of an IEP to the Student in March 2004.
At least 15 months passed with no services being provided for the Student, despite the
state requirements.  It is and was clear that the Student had a significant disability when
he enrolled at Meritor Academy.  Testing at Children's Hospital as early as 1997
confirmed a global developmental disability.  These findings were confirmed in several
reports in 1998.  AR 199-219.  They were again confirmed in the speech testing done at
Children's Hospital in August 2002.  AR 190-98  The evaluator concluded that the
Student's oral language and early reading skills need to be carefully nurtured and
monitored and recommended direct instruction in phonological awareness, given the
Student's deficits in the area. AR 196.

---

[9] These statutory provisions are implemented (at least in part) by the provisions of the
Massachusetts special education regulations at  603 CMR 28.03(1)(e) which mandates
that each " school district shall provide or arrange for the provision of evaluation services
and an IEP for any eligible private school child whose parent resides in the jurisdiction of
the school district."

The Parents' failure to provide the District notice of the intent to enroll in Landmark must be read in the context of these failures by the District.  In addition, the Parents have waived reimbursement for the first school year at Landmark. Given the facts of this case, the equities do not support barring the Parents from seeking reimbursement for subsequent years. [10]

### III.  The District's IEP failed to provide the student with a free and appropriate public education.

### A. The Hearing Officer correctly states that IDEA requires that an IEP provide measurable benefit.

Both IDEA and Massachusetts law require that school districts offer children with disabilities a free appropriate public education in the least restrictive environment appropriate to the child's needs.  *See* 20 U.S.C. § 1400 *et seq.;* M.G.L. c.71B Sec.2. School districts must offer "educational instruction specifically designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit educationally from that instruction." *Rowley*, 102 S.Ct. at 3039.  The district must provide a program that allows meaningful, not trivial, progress. *See, e.g, Lenn*, 998 F.2d at 1086 ("program must be reasonably calculated to provide 'effective results' and 'demonstrable improvement' in the various 'educational and personal skills identified as special needs'"); *Roland M.* 910 F.2d 983 ("Congress indubitably desired 'effective results' and 'demonstrable improvement' for the Act's beneficiaries"); *Burlington*, 736 F.2d at 788 ("objective of the federal floor, then, is the achievement of effective results--demonstrable improvement in the educational and

---

[10]  The District contends that the Hearing Officer "speculated" in determining that its IEP would not provide FAPE to the Student.  A review of an IEP is always a process of determining what would happen in the future based upon the content of the IEP – i.e. is does the IEP state a program that will provide meaningful benefit to the student.  If the Student had been enrolled in the District at the time the IEP was issued the analysis would have been the same and would have been equally "speculative."

personal skills identified as special needs--as a consequence of implementing the proposed IEP"); *Ridgewood Bd. of Educ. v. NE*, 172 F.3d 238 (3rd Cir. 1999) ("quantum of educational benefit necessary to satisfy IDEA . . .requires a court to consider the potential of the particular disabled student before it"); *County of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458 (9th Cir. 1996) (correct standard for measuring educational benefit under the IDEA is not merely whether the placement is reasonably calculated to provide the child with educational benefits, but rather, whether the child makes progress toward the goals set forth in IEP)

The Massachusetts Department of Education ("DOE") concludes a review of federal and state law relevant to Massachusetts's new FAPE standard by noting that the "FAPE standard . . . requires the school district to provide personalized instruction tailored to the student's needs, with sufficient support services to permit the student to make meaningful educational progress." *Mass. FAPE Advisory*.[11] The DOE also noted that the Massachusetts Education Reform Act "underscores the Commonwealth's commitment to assist all students to reach their full educational potential." *Id.*

The District argues that the Hearing Officer applied the wrong legal standard because she used the expression "meaningful benefit," rather than "some benefit." N.R. Mem. at 12-13.[12]   As noted above, the primary precedent in this area, *Burlington,* refers to a "federal basic floor of meaningful, beneficial educational opportunity" that IDEA ensures.  *Id.* at 788.   The Hearing Officer appears to have substituted the single word "benefit" for the expression "beneficial educational opportunity."   The Hearing Officer

---

[11]Found at  http://www.doe.mass.edu/sped/advisories/02_1.html (last visited 4/21/06)
[12]   The District acknowledges that an IEP should be designed to allow a student to pass from grade to grade.  The record does not indicate that the District's program would have allowed the student to achieve that, given its failure to address his attentional and auditory processing issues.

stated that the IEP had to be reasonably calculated to provide effective results and

demonstrable improvement in the educational and personal skills identified as special

needs. *See* AR 124 (citing 34 C.F.R. 300.300(3)(ii); *Lenn*, 998 F.2d 1083; and *Roland M*,

910 F.2d 983). "Congress did not intend that a school system could discharge its duty

under the [Act] by providing a program that produces some minimal academic

advancement, no matter how trivial." *Hall v. Vance County Bd. of Educ.*, 774 F.2d 629,

636 (4th Cir. 1985). There was no error in the Hearing Officer's articulation of the

applicable standard.

**B. An inappropriate program is not rendered appropriate by being the least restrictive program**

The District argues that the Hearing Officer erred by failing to consider

mainstreaming and least restrictive environment concerns. N.R. Mem. at 15-17. It is true

that in order for the District to have provided a free and appropriate public education, its

IEP not only had to be reasonably calculated to provide educational benefit but also had

to do so in the least restrictive environment. *See* 20 U.S.C. §1412(a)(5)[13]. Here,

however, the Hearing Officer determined that the District's IEP was not reasonably

calculated to provide some educational benefit. AR 126. Having so decided, she had no

reason to reach the least restrictive environment inquiry. The two requirements – that the

IEP be reasonably calculated to provide some educational benefit and that it do so in the

least restrictive environment – involve independent inquiries.

---

[13] The provision specifies, in pertinent part, that in order to remain eligible for federal money, the States must endeavor and demonstrate that -- "In general, To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily."

The latter is a Congressional imposition upon the School District *in favor of the disabled student and in addition to its other obligations*, not an offsetting obligation that obviates the District's legal duty to produce an educational plan reasonably calculated to provide some educational benefit. *See Burlington*, 736 F.2d at 789 n.19 (noting that the least restrictive environment guarantee cannot be invoked to cure an otherwise inappropriate placement); *Seattle Sch. Dist. No. 1. v. B.S.*, 82 F.3d 1493, 1500 (9th Cir. 1996) (holding that it was not error to disregard mainstreaming and least restrictive environment considerations where the school district's plan did not provide meaningful educational benefit); *Kruelle v. New Castle County Sch. Dist.*, 642 F.2d 687, 695 (3d Cir. 1981) ("Only when alternatives exist must the court reach the issue of which is the least restrictive") (citing 3 EHLR 551 at 553); *Norton Sch. Comm. v. Mass. Dept. of Educ.*, 768 F.Supp. 900, 910 (D. Mass. July 1, 1991) (noting that the First Circuit has made clear that 'the least restrictive environment guarantee cannot be invoked to cure otherwise inappropriate placement') (quoting *Burlington*). The District's analysis is mistaken in its treatment of the least restrictive environment guarantee and mainstreaming considerations as tipping factors able to save an individual education plan that is not reasonably calculated to provide educational benefit. *See* N.R. Mem. at 16. The "balancing" of the sometimes divergent goals of academic progress and least restrictive environment alluded to by the District takes place only after the court or administrative tribunal has before it two plans each of which survives the second prong of *Rowley* – i.e., each is reasonably calculated to provide educational benefit. But the Hearing Officer did not have two such plans in this case, having found that the District's plan was not reasonably calculated to provide the student with educational benefit.[14] *See* AR at 126.

---

[14] "The weight of the evidence," the Hearing Officer concluded, "shows that the student is simply too easily

The Hearing Officer's conclusion that the District's program would not meet the Student's unique needs is fully supported by both the records and by precedent.

**IV.  The Hearing Officer provided due deference to the opinions of all witnesses in determining that the program offered by the District would not provide a free and appropriate public education to the Student.**

The District argues that the Hearing Officer failed to give "substantial deference" to the program offered by the District, characterizing the dispute between the Parents and the District as a "methodological disagreement". N.R. Mem. at 17-19.  A hearing officer is required to carefully consider the opinions of local educators, but deference to these opinions is not a license to disregard *Rowley's* rule that the administrative proceeding must be given "due weight."  The Fourth Circuit Court of Appeals has stated:

> The district court . . .viewed the decision of the state hearing officers, reviewing the decision of the School Board pursuant to federal and state statutes and regulations, as the decision to which deference was due [under Rowley] ... The district court properly gave due weight to the results of the state administrative proceedings. To give deference only to the decision of the School Board would render meaningless the entire process of administrative review.

*School Bd. v. Malone*, 762 F.2d 1210, 1217 (4th Cir. 1985) (emphasis omitted).

The required deference to the opinions of the professional educators does not relieve the hearing officer or the district court of the obligation to determine as a factual matter whether a given IEP is appropriate. A factfinder need not conclude that an IEP is appropriate simply because a teacher or other professional testifies that the IEP is appropriate. The Parents presented evidence (outlined above) which demonstrated that, because of the nature of the Student's disability, the program and services proposed by the District would not provide a setting in which he could make effective progress.  The

---

distracted and has too many problems with auditory processing and auditory memory to be able to function successfully in a setting where multiple activities are going on within earshot." *Id*

16

hearing officer resolved the conflicts in testimony and decided that the environmental limitations of the District's program would make it impossible for the Student to benefit form the instruction being provided in that environment.  To conclude that the Hearing Officer erred simply because she did not accept the testimony of the District's witnesses, would render meaningless the due process rights guaranteed to parents by the IDEA.

The Parents agree that neither the Hearing Officer nor a reviewing court may reject an otherwise appropriate IEP because of dissatisfaction with the educational methodology proposed in the IEP. If an IEP is "reasonably calculated to enable the child to receive educational benefits," *Rowley,* 458 U.S. at 207, the hearing officer cannot reject it because the officer believes that a different methodology would be better for the child. *Id.* at 208 ("Once a court determines that the requirements of the Act have been met, questions of methodology are for resolution by the States.").  However, in this matter the Hearing Officer concluded that the District's IEP was not appropriate and did not provide the Student with a free and appropriate public education. AR 126.  The Student's attentional issues and auditory processing difficulties were so severe that they would have precluded him from accessing the curriculum under the District's proposed program. *Id.*

This case is similar to *Briere v. Fair Haven Grade School Distr.*, 948 F.Supp. 1242, 1254 (D.Vt. Dec. 8, 1996) where the parents' expert testified that due to the severity of her language based learning disabilities, the student would be lost in mainstream classes.  The District Court rejected the argument that the dispute was over methodologies, finding that the school district had failed to offer an appropriate IEP.[15]

---

[15] *Accord*, *Evans v. Board of Educ. of Rhinebeck Cent. School*, 930 F.Supp. 83 (S.D.N.Y. 1996); *Capistrano Unified School District,* 3 IDELR 1209 (Cal Educ. Ag'cy 1995).

If the District's IEP were appropriate, it would be impermissible for the Hearing Officer to reject it simply because she thought Landmark a better program for the Student. But here, the Hearing Officer concluded, as a factual matter, that the District's IEP was not appropriate for the Student and that Landmark, with its small classes, focused effort, and one-to-one tutorials, would provide a program that would make the curriculum available to the student despite his attentional and auditory processing deficits. Her decision is fully supported by the weight of the evidence. Accordingly, the Hearing Officer's decision should not be overruled as a mere "methodological dispute."[16]

The record supports the Hearing Officer's determination that placement in a mainstream science classroom would deny the Student appropriate instruction and meaningful access to the curriculum. Dr. Susan Brefach and Ruth Margulies testified that the Student would have significant difficulty in attending the large regular education science class that would have been part of the Student's curriculum in the spring of 2004 and for the 2004-2005 school year. RT, Vol. 1, 76, 212-16. Dr. Brefach indicated that this classroom would have been overwhelming to Student. *Id.* at 68-69. The classroom had a notable amount of background noise, and the size alone would have presented problems. *Id.* Dr. Brefach did not observe the type of adaptation of language that would have been required for the Student to be successful. *Id.* Ms. Margulies similarly believed that it would be very difficult for any teacher in this environment to be able to provide the kind of systemic language adaptations that are necessary. *Id.* at 212-16.

The Student clearly has attentional and auditory processing issues, as all those who tested him noticed. His attentional issues were obvious as early as at 30 months of

---

[16] The District cites no cases for the proposition that the environmental modifications required in this case are a matter of methodology.

age. AR 209-17.  Observing him more recently, the District's personnel found him highly

distractible, even in the one-to-one testing environment.  RT, Vol. 3, 128-30.  Dr. Brefach

and Ruth Margulies opposed placing him in a classroom of more than eight students. *Id.*

at Vol. 1, 69, 212-26.  Carrie Fiore acknowledged that Student's distractibility would

have to be addressed but believed that the small number of students in her classroom

would enable her to continually redirect and refocus him.  *Id.* at Vol. 4, 122-25.  In

addition to having twenty-five students, the science class usually has instruction taking

place in groups – so that several activities may be occurring at one time.  *Id. at* Vol. 4,

197, 209.

These facts support the determination of the Hearing Officer that the Student

could not receive any significant educational benefit from the program that the District

proposed.  This decision, fully grounded in the evidence adduced at the hearing, is

entitled to deference and should be adopted by this Court.

**V.  The Landmark School Provides a Comprehensive and Integrated Program
Designed to Address the Student's Specific Individual Needs and Is an Appropriate
Placement**

No meaningful evidence was introduced that the Landmark program was not an

appropriate educational program for the Student.  The District proffers only one reason

for disturbing the Hearing Officer's finding that the Landmark School is appropriate –

that some of its employees are not state-certified. *See* N.R. Mem. at 20. That fact alone

does not render the program ineffective or inappropriate.  *See Florence County School*

*District Four v. Carter*, 510 U.S. 7, 14 (1993) (holding that reimbursement was not

barred when private school failed to meet state education standards and employed staff

who were not state-certified).[17]  Moreover, the District's proposed program uses a teacher whose only certification is in physical education to conduct a literature class two days per week. AR 380; RT, Vol. 4, 112.  The District cannot argue that the lack of teacher certification renders a program inappropriate without conceding that its own program was inappropriate.  Many of the teachers at Landmark have a Masters in Special Education and no evidence was presented that any of them are not competent teachers.

The District's own witnesses acknowledged that the program at Landmark was appropriate, though they thought that it was not the least restrictive environment. Both Ms. Feeney-Grater and Ms. Fiore testified that the program at Landmark was appropriate. RT, Vol.3, 104; Vol. 4, 80, 82, 146.  The former testified that each class is teacher-directed, structured and organized. RT, Vol. 3, 104.  Ms. Fiore agreed that the Student had made progress in the Landmark program, and indicated that the District's program would employ many of the same strategies as Landmark. RT, Vol. 4, 82, 146.

To be "appropriate," a parent's placement must provide for significant learning and confer meaningful benefit through personalized instruction with sufficient support services. See *Rowley*, 458 U.S. at 188-189; *Burlington,* 736 F.2d 773.  The Landmark program meets these criteria.  At Landmark, Student has an opportunity to further his learning and strengthen his reading and writing skills. As such, it provides him with an appropriate educational program.   For these reasons, reimbursement for all costs associated with the placement at Landmark is appropriate.

## **CONCLUSION**

---

[17] *See also In re: Melanie and Concord-Carlisle*, 40 IDELR 202 (BSEA # 02-3458,11/19/2003)( lack of special education certification by certain teachers in a private program does not render the program inappropriate); *Maryland School for the Deaf*, 45 IDELR 56 (holding that teacher certification was not required in order for deaf student's education to be appropriate under IDEA).

For the foregoing reasons, the Motion of the Plaintiff for Summary Judgment should be denied in its entirety. The Court should enter an Order affirming the decision of the Bureau of Special Education Hearing Officer as that decision is fully supported by the record in this matter.

Respectfully submitted,

Courtney and Timothy Grafton
By their attorneys,

Date:                               /s/ *Tim Sindelar*
                                    Tim Sindelar, BBO #557273
                                    /s/ *David Mollow*
                                    David Mollow BBO#653597
                                    Ames, Hilton, Martin & Sindelar
                                    22 Putnam Avenue
                                    Cambridge, MA 02139
                                    (617) 871-2140
                                    Fax: (617) 871-2141
                                    sindelar@ahmslegal.com

**CERTIFICATE OF SERVICE**

I certify that this document filed through the ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 21, 2006

Date:                               /s/ *Tim Sindelar*
                                    Tim Sindelar